UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| EKA CHEMICALS, INC., et al., | ] |
| Plaintiffs, | ] |
| vs. | ] CV-01-CO-01880-W |
| ROYAL TRUCKING COMPANY, | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

Presently before the court is a motion for partial summary judgment, filed by the defendant on May 8, 2003. [Doc. # 39.] The issues raised in the motion have been fully briefed by the parties, and are now ripe for decision. Upon due consideration, the court is of the opinion that the motion for partial summary judgment is due to be granted in part and denied in part.

II.  Facts.[1]

---

[1] The facts set out below are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).



The plaintiff, EKA Chemicals, Inc. ("EKA"), is in the business of manufacturing and shipping various chemicals, including palladium catalyst beds, utilized for the production of hydrogen peroxide. [Compl. ¶ 5.] On February 2, 1995, EKA and Royal entered into a contract for the transportation of cargo for EKA by Royal. [Def.'s Ex. D.] There is no evidence in the record that the contract was terminated or cancelled before the accident. The bill of lading accompanying the shipment in question stated in pertinent part, "The agreed or declared value of the property is hereby specifically stated to be not exceeding $.50 per lb. for each article. If lower freight charges do not result, the release will be deemed not to have been executed." [Def.'s Ex. G.]

On October 20, 1999, EKA contracted with Defendant, Royal Trucking Company ("Royal"), for motor transportation of two twenty-foot containers loaded with palladium catalyst beds from EKA's premises in Columbus, Mississippi, to Portsmouth, Virginia. [Compl. ¶ 6]. While Royal was en route to Portsmouth and along U.S. Highway 82 East, the truck carrying the catalyst beds collided with a railroad bridge in Gordo, Alabama, causing damage to the catalyst beds. [Compl. ¶ 8.] EKA submitted a claim to its

insurer, Plaintiff Gerling America Insurance Company ("Gerling"), which paid EKA $1,069,571.86. [Def.'s Ex. Y.]

On July 27, 2001, EKA filed its complaint, alleging that it is entitled to recover for damages as a result of the accident pursuant to the Carmack Amendment, 49 U.S.C. § 14706. [Compl.] EKA claims damages in the amount of at least $1,069,571.86. [Compl. ¶ 12.] The instant motion for partial summary judgment was filed on May 8, 2003.

III. Standard.

Summary judgment is proper, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter or law." Fed. R. Civ. P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by

showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. 322-23. In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party. *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

Adjudications of partial summary judgment are authorized under Fed. R. Civ. P. 56(d) and are governed by the standards for summary judgment under Rule 56(c). *Johns v. Jarrard*, 927 F.2d 551, 554-56 (11th Cir. 1991).

A partial summary judgment "serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of material fact." (Fed. R. Civ. P. 56(d) advisory committee's note).

IV. Discussion.

EKA's claims include but are not limited to (1) the cost of remanufacturing new catalyst beds; (2) palladium losses; (3) reclamation costs; and (4) lost production. As an initial matter, EKA concedes that the proper measure of reclamation expenses should be actual costs rather than budgeted costs.[2] [Pl.'s Opp. at 1.] Further, EKA has agreed to withdraw its claim for lost production, in exchange for Royal's admission of negligence.[3] [Pl.'s Opp. at 1.] Therefore, the court will not address those specific issues.

    A.   Contractual Limitation on EKA's Right to Recover.

Since the subject of this lawsuit is goods transported in interstate commerce, the rights and duties of the parties are governed by the Carmack

---

[2]Counsel for Plaintiff submits that the parties will stipulate to this issue in the parties' Joint Pretrial Order.

[3]Plaintiff states in its brief in opposition that counsel for both parties have signed a letter of stipulation regarding this issue.

Amendment, 49 U.S.C. § 14706. Under the Carmack Amendment, when goods are damaged while being transported, liability may be imposed against the carrier for the actual loss or injury to the property. [49 U.S.C. §14706(a)(1).] However, liability may be contractually limited. In 1913, the Supreme Court held that, in light of the Carmack Amendment:

> [A] carrier may, by a fair, open, just, and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value, made for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk.

*Adams Express Co. v. E.H. Croninger*, 226 U.S. 491, 509-10 (1913).

EKA and Royal entered into a contract on February 2, 1995, for the transportation of EKA's cargo by Royal. Concerning Royal's liability, the contract states in pertinent part:

> Carrier shall maintain public liability insurance with a single limit of not less than $1,000,000.00. Carrier shall maintain cargo insurance for loss or damage to goods shipped pursuant to this Contract with a limit of $300,000.00 per truckload, which shall be Carriers [sic] maximum liability. For those shipments valued in excess of this amount, Carrier shall not be liable to pay for greater proportion of liability for loss or damage than $300,000.00 bears to 100% of the value of the goods.

[Def.'s Ex. D.]

Royal contends that EKA's right to recover from it, if any, should be limited to the terms of the contract. EKA offers a number of arguments to refute Royal's contention, none of which demonstrate the existence of a genuine issue of material fact.

First, in its response to EKA's first interrogatories, Royal stated that the relationship between itself and EKA was governed by the bill of lading. [Pl.'s Ex. 1.] Royal later amended its response to state that its relationship with EKA was instead governed by the contract. [Pl.'s Ex. 14.] EKA contends that this— Royal's inconsistency as to whether the contract or bill of lading governed—proves that there is a genuine issue of material fact. EKA further argues that Royal's supplemental response was not signed and should be disregarded by the court. However, from Royal's brief in support of its motion for partial summary judgment, it is clear that Royal's position is that the contract is valid. [Def.'s Mem. Supp. Summ. J. at 23.] Royal contends that the bill of lading should apply only in the event the court finds the contract inapplicable. [Def.'s Mem. Supp. Summ. J. at 23.] Therefore, this alleged inconsistency alone is not enough to refute summary judgment.

Second, EKA contends that the two individuals primarily responsible for arranging Royal's transportation of EKA's cargo had no knowledge of the contract. However, the fact that certain individuals employed by the respective parties did not know of, or did not remember, the existence of a contract executed years earlier, does not alone turn the enforceability of the contract into a genuine issue of material fact.

Third, EKA submits that even if the contract is enforceable, the language is ambiguous and the intent of the parties cannot be resolved on summary judgment. Specifically, EKA argues that while the pertinent language purports to limit liability to $300,000, the last sentence purports to require the parties to share the risk of cargo valued above $300,000. EKA contends that this renders the contract ambiguous and internally inconsistent and does not agree with Royal's interpretation of that part of the contract. Specifically, the last sentence of the limited liability clause states, "For those shipments valued in excess of this amount, Carrier shall not be liable to pay for greater proportion of liability for loss or damage than $300,000 bears to 100% of the valued goods." [Def.'s Ex. D.]

Royal interprets this sentence to render the following formula:

Plaintiff's Loss     X     $300,000      = Plaintiff's Right to Recover
                    Value of Goods on Truck

[Def.'s Mem. Supp. Summ. J. at 22.]

Whether a contract is or is not ambiguous is a question of law for the court to determine. *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1439 (11th Cir. 1996). The very nature of an ambiguity is two reasonable, competing interpretations of a contract. *Doe v. Bush*, 261 F.3d 1037, 1062 (11th Cir. 2001). Throughout its brief in opposition, EKA never proposes another interpretation of the contract but has instead been content to argue that Royal's reading is unreasonable. Royal has submitted a reasonable construction that renders all parts of the paragraph consistent and EKA has failed to offer any alternate reading of the paragraph, reasonable or unreasonable.

To its credit, EKA submits the affidavit of Robert Stokely, an EKA representative who negotiated the contract with Royal. [Pl.'s Ex. 9.] Mr. Stokely stated that it was never intended for Royal's liability to drop below $300,000 for losses that exceeded $300,000. [Pl.'s Ex. 9.] However, once a court had determined that a contract is not ambiguous, the true intent of

the parties will not be considered. *Moore v. Pennsylvania Castle Energy Corp.*, 89 F.3d 791, 795 (11th Cir. 1996)("Under Alabama law, extrinsic evidence relating to the alleged 'true intent' of the parties is not admissible if the written document is clear and unambiguous.")(citation omitted).

Although not addressed in its brief in opposition, EKA has argued that Royal did not specifically adhere to each and every contract provision and as such, the contract is not enforceable. [Def.'s Ex. E at 3-4.] Specifically, EKA points to Royal charging a flat fee for certain shipments instead of $1.50 per mile as stated in the contract. In addition, EKA claims that none of the procedures for amending the fixed rate were adhered to. Further, EKA states that Royal never demonstrated that cargo insurance was in place per the contract. [Def.'s Ex. E at 3-4.]

The court "recognize[s] that alteration, modification or waiver of contract provisions may be implied from the acts and circumstances surrounding the performance of such contract." *Stauffer Chemical Co. v. W.D. Brunson*, 380 F.2d 174, 182 (5th Cir. 1967). In the instant case, there is evidence of occasional modification of the freight rates. However, there is no indication that the parties ever altered, modified, or waived the

liability clause, especially to the extent of enlarging Royal's liability to EKA. Therefore, the court declines to find the liability provision was modified or voided by the course of dealing between Royal and EKA.

As EKA has submitted no evidence showing that the contract was terminated or canceled before the date of the accident [Def.'s Ex. E at 2.], and for the reasons stated above, the court finds that the contract is valid and enforceable. Although the court finds the contract to limit Royal's overall liability, the amount of that liability shall remain an issue of fact to be decided at trial.

  B. EKA's Right to Recover for Catalyst Beds.

Royal contends that it should not be required to compensate EKA for the cost of new catalyst beds. It is undisputed that the beds involved in the accident were spent, or used, catalyst beds which had reduced lifespans. EKA subsequently bought new catalyst beds to replace the spent beds. Therefore, the crux of EKA's claim is that Royal should be liable for EKA's expenditure for new catalyst beds even though the beds that were actually damaged were used. This is in direct contradiction to the goal of the

Carmack Amendment. The Amendment explicitly states that the liability imposed is for the *actual* loss or injury to the property caused by the delivering carrier.

> The fundamental principal of the law of damages being compensation for the injury sustained, the plaintiff in a civil action for damages cannot hold a defendant liable in damages for more than the actual loss which was inflicted by his wrong. The law will not put him in a better position than he would be in had the wrong not been done or the contract not been broken.

*Missouri Pac. R.R. Co. v. H. Rouw Co.*, 258 F.2d 445 (5th Cir. 1958)(quoting 15 Am. Jur., *Damages*, § 13). Indeed, to allow EKA to recover the cost of new catalyst beds to replace spent catalyst beds with a reduced lifespan, would put EKA in a better position than had the accident never occurred.

Therefore, the court is of the opinion that EKA's right to recover is limited to the pre-loss value of the damaged catalyst beds, not the cost for new beds. The pre-loss value itself, however, constitutes a question of fact and will be decided at trial.

C.  EKA's Right to Recover Loss of Palladium.

1.  Amount of Palladium Lost.

EKA alleges that out of 80 kilograms of palladium, worth $1,063,000.00, involved in the accident, only 54.666 kilograms, worth $726,184.00, was recovered. EKA claims a loss of $336,816.00. Royal, however, points to the deposition of EKA representative Timothy Groman for the proposition that EKA recovered more palladium than it actually claimed:

> BY MR. McMINKLE:
>
> Q. Well, you've already told me - you know math. Well, you're an engineer. You've already told me that only two of the 32 slices made their way out of their frame and onto the road; is that correct?
> A. Yes.
> Q. So is it fair to say that just before the accident occurred, whatever that number is in terms of the volume of the catalyst material, only two out of 32, one-sixteenth of that particular cargo ended up on the roadway; is that correct?
> A. Your math sounds right.
> Q. All right. So is it fair to say that less than 7 percent of the catalyst material that was in - again, assuming my assumption that I've given you - that less than 7 percent was actually expelled onto the roadway in this accident?
> A. I don't have my calculator to do the math, but it sounds reasonable.

> Q. And is it true that - well, let me back up. Of the two slices that made their way onto the roadway, okay, or into the ditch, or wherever it is they left their framing, what percentage of those two slices did you recover?
> A. As much as possible. Percentage wise I don't know.
> Q. Was it more than 50 percent?
> A. Yes.
> Q. Was it more than 75 percent?
> A. Most likely.

[Def.'s Ex. T.] Royal argues that only 1-2%, as opposed to 31.7%, of the cargo could have been lost. Therefore, Royal asks the court to limit EKA's right to recover for the lost palladium to $3,600-$7,200 which is 1-2% of $336,816. However, Royal's proffered evidence of Mr. Groman's deposition only emphasizes the speculative nature of assessing the amount of palladium lost. As such, the court is of the opinion that the amount of palladium lost is a question of fact and therefore summary judgment is denied. The issue will be reserved for trial.

   2.   Monetary Loss.

Royal contends that regardless of the palladium lost, EKA is not

entitled to recover since the salvage value of the palladium more than compensated EKA for the alleged loss of palladium due to the accident.

At the end of its useful life, every catalyst bed is destroyed during the "reclamation process" which takes several months. [Def.'s Ex. M.] The only component of the catalyst bed that survives the reclamation process is the extracted palladium which can be used again. However, there is no way to determine the salvage value of the palladium until the reclamation process is completed.

EKA purchased 80 kilograms of palladium, at a cost of $1,063,000.00 to replace the palladium lost in the accident. EKA alleged that it recovered 56 kilograms of palladium from the damaged catalyst beds at the end of the reclamation process several months after the accident. Royal argues that when the 56 kilograms of palladium was recovered, it had a market value of approximately $1,134,410.00. [Def.'s Ex. U.] Royal contends that since EKA did not actually experience any loss in palladium value, it is not entitled to recover for the loss.

EKA argues that it could have profited from the increased market price only if it sold the palladium recovered from the beds. EKA submits that it does not sell recovered palladium but instead uses it in new or regenerated catalyst beds. [Mayo Dep., Pl.'s Ex. 10.] In turn, Royal states that before the accident, the catalyst beds in question contained 80 kilograms of palladium. After the accident, EKA purchased 80 kilograms of palladium to replace the palladium in the damaged beds. Once the catalyst beds underwent the reclamation process, approximately 56 kilograms of palladium was recovered. Therefore, EKA possessed 136 kilograms of palladium instead of 80 kilograms — the amount EKA would have possessed had the accident not occurred.

It is Royal's contention that EKA clearly should have sold the recovered palladium in order to mitigate its losses. Although the duty to mitigate cannot be readily assessed from the text of the Carmack Amendment, the Amendment draws upon principles of common law. *Hector Martinez & Co. v. Southern Pac. Transp. Co.*, 606 F.2d 106, 108 n.1 (5th Cir. 1979). In other words, even under the Carmack Amendment, a party cannot recover for damages which could reasonably have been avoided. However, whether

EKA failed to mitigate its damages by keeping the palladium instead of selling it raises a material issue of fact which the court cannot decide on a motion for summary judgment. Therefore, the motion for partial summary judgment on this issue is due to be denied and will be reserved for trial.

    D.    EKA's Right to Recover Reclamation Costs.

Royal requests this court to prohibit EKA from recovering the costs of reclamation of the damaged catalyst beds. At the end of the useful life of a catalyst bed, it is destroyed through the reclamation process which takes several months. This process occurs whether a catalyst bed is damaged or at the end of its useful life. Thus, Royal argues that EKA would have had to incur the expense at some future date, even if the accident had not occurred.

In *Missouri Pac. R.R. Co. v. The H. Rouw Co.*, 258 F.2d 445, 448 (5th Cir. 1958), the Fifth Circuit held that certain commissions which plaintiff would have had to pay if the subject shipment was not damaged should be deducted from plaintiff's recovery. As previously quoted in *Rouw*, and in

this opinion, the law of damages will not put a plaintiff in a better position than he would be in had the wrong never occurred.

Once a catalyst bed ends its useful life, whether by maximum use or damage to it, the bed goes through the reclamation process. Therefore, it cannot be disputed that if the accident never occurred, EKA would have been required to put the catalyst beds through the reclamation process once the beds ended their useful lives. However, because the accident did in fact occur, EKA was forced to subject the beds to the reclamation process sooner than expected. As a result, reclamation costs for these beds were incurred earlier than had the accident never occurred. Therefore, the court is of the opinion that even though EKA may not recover for reclamation costs it would have incurred had the accident not happened, EKA may recover the time value between the time of the reclamation and the time the reclamation would have normally occurred absent the accident. The length of that period and the amount of the time value, however, are questions of fact and will be determined at trial.

V.   Conclusion.

In sum, the court is of the opinion that the motion for partial summary judgment is due to be granted in part and denied in part. The court will enter an appropriate order in conformity with this memorandum of opinion.

Done, this  19th  of February, 2004.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE